UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AIR VENT, INC. and GIBRALTAR INDUSTRIES, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-0516-B |
| POWERMAX ELECTRIC CO., LTD., | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Powermax Electric Co., LTD. ("Powermax")'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8). Powermax claims this Court lacks personal jurisdiction because Powermax is not "at home" in Texas and has not established sufficient minimum contacts with Texas. For the following reasons, the Court **GRANTS** the Motion.

## I.
## BACKGROUND

*A.    The Parties*

Plaintiffs Air Vent, Inc. and Gibraltar Industries, Inc. are Delaware corporations with their principal places of business in Dallas, Texas. Doc. 1, Compl., ¶¶ 1–2. Air Vent and Gibraltar "manufacture and sell powered attic ventilation products, some of which include ventilation fans powered by electric motors." *Id.* ¶ 7. These attic ventilation fans "include fan motors designed and manufactured by third parties." *Id.*

Powermax is a foreign corporation based in China. *Id.* ¶ 3. Its principal place of business is in Jiangmen City, Guangdong, China. Doc. 9, Br. Mot. Dismiss, 8. Powermax does not rent or own

property in Texas, maintains no office in Texas, and has no assets in Texas. *Id.* It is not "licensed, authorized or registered to do business in Texas." *Id.* Powermax designs, manufactures, and sells electric fan motors. *See* Doc. 1, Compl., ¶¶ 3, 8. One Powermax customer, DM (Asia), Ltd. ("DM Asia"), would place purchase orders with Powermax and then resell those motors to other customers, including Plaintiffs. *Id.* ¶ 10; Doc. 9, Br. Mot. Dismiss, 8. However, Powermax never directly contracted with or sold motors to Plaintiffs. Doc. 9, Br. Mot. Dismiss, 8.

B.     *The Dispute*

This dispute concerns whether Plaintiffs can hale Powermax into a Texas court regarding a residential fire allegedly caused by an attic fan manufactured by Plaintiffs. This fire occurred in California and damaged the home of Kevin and Natasha Chaja. Doc. 1, Compl., ¶ 24. The Chajas' insurer, State Farm General Insurance Company ("State Farm") filed a complaint (the "Chaja lawsuit") against Plaintiffs in California state court. *Id.* Plaintiffs brought crossclaims against Powermax, who allegedly manufactured the fan's motor. *Id.* ¶¶ 24, 27. Powermax filed a motion to dismiss for lack of personal jurisdiction. *Id.* ¶ 27. The California court granted the motion, finding Powermax lacked purposeful contacts with California under the "stream of commerce plus" test. *Id.*

After Powermax was dismissed, Plaintiffs settled the Chaja lawsuit with State Farm. Doc. 9, Br. Mot. Dismiss, 6. Plaintiffs then filed this action against Powermax "seeking indemnification from Powermax for the amount Plaintiffs incurred in defense costs and the settlement payment in the Chaja lawsuit." *Id.* Powermax again filed a motion to dismiss for lack of personal jurisdiction. *See* Doc. 8, Mot. Dismiss. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. In resolving a Rule 12(b)(2) motion, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). Parties "seeking to invoke the power of the court bear[] the burden of proving that jurisdiction [over the moving defendant] exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). When no evidentiary hearing occurs, a plaintiff is not required to "establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Id.* Moreover, any factual conflict contained in the parties' submissions must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir. 2003).

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.,* 882 F.3d 96, 101 (5th Cir. 2018). But "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*

Due process has two elements. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction permits a court to hear all claims against a nonresident defendant when the defendant's affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in that state. *Sangha*, 882 F.3d at 101 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, by contrast, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Id.* at 102. In determining whether the assertion of jurisdiction is fair, the Court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care*, 438 F.3d at 473.

### III.

### ANALYSIS

Because the parties do not dispute that the Court lacks general jurisdiction over Powermax, the Court focuses its inquiry on whether it has specific jurisdiction over Powermax. The Fifth Circuit applies a three-step analysis to determine whether specific personal jurisdiction over a defendant exists:

> (1) whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's

forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* at 469 (alteration omitted). The Court addresses each of these steps in turn.

A.      *Whether the Court May Consider Plaintiffs' Exhibit A*

The Court first addresses Powermax's evidentiary objections to Plaintiffs' Exhibit A (Doc. 10-1) attached to their Response.[1] Specifically, Powermax moves to strike the Declaration of Brad Holland (the "Holland Declaration") (Doc. 10-1, Ex. A) as improperly executed. Doc. 13, Reply, 2. It argues the Holland Declaration is not verified as true under penalty of perjury and contains an improper signature. *Id.* at 2–3. However, on page one of the Holland Declaration, Holland states: "I declare under penalty of perjury under the laws of the state of Texas that the facts stated herein, which [sic] are all true and correct." Doc. 10-1, Ex. A, Holland Decl., 1. This is sufficient under 28 U.S.C. § 1746. *See* 28 U.S.C. § 1746(2) (stating a declaration is validly executed if it states in a substantially similar form, "[i]f executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'."). Further, the Holland Declaration is electronically signed on page seven. *See* Doc. 10-1, Holland Decl., 7. While Powermax contests the validity of this signature, it cites no rule to support this argument and the Court is not aware of any rule requiring a certain signature. *See* N.D. Tex. Special Order 2-89 (repealing the rules detailing what constitutes an electronic signature and the requirements for such signature). Thus, the Court finds no issue with the Holland Declaration and will consider it in its analysis.

_____

[1] Because the Court does not rely on Exhibit A-6 (Doc. 10-1, 90–102), Exhibit C, or Plaintiffs' "direct shipment allegations" for its decision, the Court declines to rule on Powermax's objections to their inclusion.

B.      *Whether Powermax Purposefully Directed Its Activities Toward Texas*

The Court next addresses Powermax's contacts with Texas. Here, the parties' dispute is governed by the stream-of-commerce test, which is typically invoked in cases in which "a nonresident defendant, acting *outside* the forum, places in the stream of commerce a product that ultimately causes harm *inside* the forum." *Goodyear*, 564 U.S. at 926. The Fifth Circuit has held that under this test "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (internal quotations and alteration omitted). However, "the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.* (internal quotations and alteration omitted).

In *Ainsworth*, the Fifth Circuit adhered to Justice Breyer's concurrence in *J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 872 (2011), which furnished the narrowest grounds for the decision and thus controlled. *Ainsworth,* 716 F.3d at 178. There, Justice Breyer reiterated past Supreme Court precedent that held "a single isolated sale" could not subject a foreign defendant to personal jurisdiction, "even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." *McIntyre*, 564 U.S. at 888–89 (Breyer, J., concurring). Further, he emphasized the focus on the relationship between "the defendant, the forum, and the litigation" in criticizing the lower court's approach, which seemed to confer personal jurisdiction as long as a defendant sold its products to a nationwide distributor that *could* lead to its products entering the forum. *Id.* at 891 (emphasis omitted).

Relying on Justice Breyer's concurrence, the Fifth Circuit held Moffett Engineering, a foreign forklift manufacturer, was subject to personal jurisdiction in Mississippi after an allegedly

defective forklift it sold to a distributor ran over and killed an individual in Mississippi. *See Ainsworth,* 716 F.3d at 176, 179. Unlike in *McIntyre,* the Fifth Circuit reasoned Moffett sold thousands of forklifts to its U.S. distributor and at least 200 forklifts were sold to customers in Mississippi. *Id.* at 179. Further, because the forklift at issue was a poultry-related forklift, the Court found that "[Moffett] reasonably could have expected that [sales in Mississippi] would be made, given the fact that Mississippi is the fourth largest poultry-producing state." *Id.*

However, these principles have their limits. In *Zoch v. Magna Seating (Germany) GmbH,* 810 F. App'x 285 (5th Cir. 2020), the Fifth Circuit declined to extend personal jurisdiction to Magna, a foreign car-seat manufacturer who supplied products to an assembly plant "knowing that those seats would be placed in vehicles ultimately destined for the *United States* generally, not *Texas* specifically." *Id.* at 292. The court explained: "there must be some proof that [the defendant] placed its product 'into the stream of commerce with the expectation that it would be purchased by or used by consumers *in the forum state.*'" *Id.* Further, unlike the 200 forklifts in *Ainsworth,* Zoch provided "no evidence as to the number of [Magna's products] actually sold in Texas or income generated from those Texas sales from which [the court] could perhaps infer Magna's knowledge of the likely number of its [products] that would end up in that state." *Id.*

Here, the Court must determine whether Powermax's contacts more closely resemble the contacts in *Ainsworth* or in *Zoch.* Powermax argues it lacks the minimum contacts with Texas to establish personal jurisdiction. Doc. 9, Br. Mot. Dismiss, 13. It argues that the decision of a distributor to sell Powermax's products to a Texas corporation cannot put it "on notice that it may be [haled] into courts located within Texas. *Id.* at 15. Plaintiffs argue Powermax's sale of its products to  Texas customers, either directly or indirectly, establishes that Powermax could have foreseen its products arriving in Texas after placing them in the stream of commerce. Doc. 10,

Resp., 19. Thus, according to Plaintiffs, this foreseeability creates personal jurisdiction over Powermax.

The Court finds Powermax has purposefully availed itself with Texas and should have reasonably anticipated being haled into court here. First, Plaintiffs provide direct proof that Powermax products were purchased and shipped to Texas. *See Ainsworth*, 716 F.3d at 179 (finding 203 Moffett forklifts were sold to Mississippi customers); *cf. Zoch*, 810 F. App'x at 292 (finding no evidence of sales in the forum state); *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 509 (N.D. Tex. 2014) (Boyle, J.) ("Allegations of three products making it into the forum state is a far cry from the concrete proof of 203 forklifts in *Ainsworth*."). Unlike in *Zoch* and *Allstate*, Plaintiffs provide invoices showing thousands of Powermax motors were purchased and ultimately shipped to Texas over the span of several years. *See* Doc. 10-1, Holland Decl., Exs. A-1 at 10–63, A-3 at 69–75 (detailing purchases of Powermax motors by Plaintiffs).

The invoices themselves also provide a sufficient basis for Powermax to reasonably foresee its products being sold in Texas. The invoices, made on Powermax letterhead, between Powermax and DM Asia, include a "port of discharge" of Dallas, Texas. *See* Doc. 10-1, Holland Decl., Ex. A-3, at 69–75. Powermax cannot in good conscience claim it could not have foreseen its products being sold in Texas given these invoices. *Cf. Allstate*, 997 F. Supp. 2d at 509 (finding lack of foreseeability where defendant had no "knowledge as to where in [the distributor's] broad network its [products] *might* end up after handing the product off").

Finally, the fact that these purchases were facilitated by DM Asia is of little consequence. *See Luv N' care,* 438 F.3d at 471 ("[J]urisdiction may attach both to manufacturers who supply their own delivery systems and to those that make use of the distribution systems of third parties."). Powermax's argument that the Free on Board ("F.O.B.") term in the purchase orders distances it

from contact with Texas is similarly unavailing. *See id.* at 471–72 ("[A] F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper."). Here, as in *Luv N' care*, the quantity and frequency of Powermax motors shipped to Texas suggests that jurisdiction is proper. *See* Doc. 10-1, Holland Decl., Exs. A-1 at 10–63, A-3 at 69–75. Accordingly, the Court finds that Powermax has purposefully availed itself with Texas.

C.     *Whether Plaintiffs' Cause of Action Arises out of Powermax's Forum-Related Contacts*

These contacts must also give rise to Plaintiffs' cause of action, and here, the Court finds that they do not. "For the exercise of specific jurisdiction to comply with due process, 'the suit must arise out of or relate to the defendant's contacts with the forum.'" *Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 448 (5th Cir. 2019) (emphasis omitted) (quoting *Bristol–Meyers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Bristol–Meyers Squibb*, 137 S. Ct. at 1780). "Such activity or occurrence must 'create a substantial connection with the forum State.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "Absent this connection, 'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Id.* (quoting *Bristol–Meyers Squibb*, 137 S. Ct. at 1781).

The Supreme Court recently clarified the relatedness test in *Ford Motor Co. v. Montana Eighth Judicial District Court,* 141 S. Ct. 1017 (2021). There, two plaintiffs brought products-liability suits against Ford in two different states stemming from two separate car accidents and suits. *Ford Motor Co.*, 141 S. Ct. at 1022. Ford argued both states lacked specific jurisdiction because the cars involved in the accidents were not sold, designed, or manufactured by Ford in the forum states. *Id.*

The Supreme Court rejected Ford's strict causal theory of relatedness and explained that while relatedness "does not mean anything goes," "courts may yet have jurisdiction, because of another 'activity [or] occurrence' involving the defendant that takes place in the State." *Id.* (quoting *Bristol–Myers Squibb*, 137 S. Ct. at 1780).

But, the majority opinion also specifically rejected Justice Gorsuch's "view that a state court should have jurisdiction over a nationwide corporation like Ford on *any* claim, no matter how unrelated to the State or Ford's activities there." *Id.* at 1027 n.3. It explained:

> On that view, for example, a California court could hear a claim against Ford brought by an Ohio plaintiff based on an accident occurring in Ohio involving a car purchased in Ohio. Removing the need for any connection between the case and forum State would transfigure our specific jurisdiction standard as applied to corporations. "Case-linked" jurisdiction would then become not case-linked at all.

*Id.* (internal citation omitted). Thus, while the vehicles in question were not sold, designed, or manufactured by Ford in the forum states, the Supreme Court held that the injury, along with the fact that Ford "promoted, sold, and serviced the products," within the forum states created a sufficient connection to warrant specific jurisdiction over Ford. *Id.* at 1032.

Here, Powermax argues "no connection – let alone a 'substantial' one – exists between Powermax and Texas regarding the use of the product at issue, which Plaintiff[s] claim[] caused [their] injury." Doc. 9, Br. Mot. Dismiss, 8. In contrast, Plaintiffs present no argument as to how their claims relate to Powermax's Texas contacts. As Plaintiffs have the burden of demonstrating this Court's jurisdiction, this failure to brief essentially concedes the issue of relatedness. *See Luv N' care,* 438 F.3d at 469. However, even if Plaintiffs had briefed the issue, the Court is convinced Powermax's contacts are not sufficiently related to Plaintiffs' cause of action.

The facts of this case more closely resemble the scenario the *Ford* Court cautioned against. *See Ford*, 141 S. Ct. at 1027 n.3 (rejecting Justice Gorsuch's theory of jurisdiction under which "a

California court could hear a claim against Ford brought by an Ohio plaintiff based on an accident occurring in Ohio involving a car purchased in Ohio"). The fire allegedly caused by Plaintiffs' fan occurred in California. Doc. 1, Compl., ¶ 24. The Chaja lawsuit was initiated in California. *Id.* Plaintiffs defended and settled the Chaja lawsuit in California. Doc. 9, Br. Mot. Dismiss, 7. Plaintiffs do not allege that the fan, with Powermax's motor, was manufactured in Texas. Nor do they allege that the Chajas' fan was purchased in Texas.  The only Texas connections are Plaintiffs' principal places of business and receipt of the motors. *See* Doc. 1, Compl., ¶¶ 1–2; Doc. 10-1, Holland Decl., Ex. A-3 at 69–75. These two instances alone cannot "connection between the forum and the specific claims at issue." *See Bristol–Meyers Squibb*, 137 S. Ct. at 1781.

    While the Court notes that this is a close call given Plaintiffs' residence and Powermax's, albeit indirect, sales in Texas, the Court finds "the brunt of the harm" suffered by Plaintiffs occurred in California. *See Calder v. Jones*, 465 U.S. 783, 789 (1984). Thus, the Court finds Powermax's contacts are not sufficiently related to Plaintiffs' suit to warrant specific personal jurisdiction.

D.    *Whether Exercising Personal Jurisdiction over Powermax Is Fair and Reasonable*

    Because Plaintiffs have not carried their burden in showing Powermax's contacts were sufficiently related to its suit, the Court need not address whether exercising jurisdiction is fair and reasonable. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 544–45 (5th Cir. 2019) ("[C]ourts only reach this [fair and reasonable] prong after establishing the defendant's minimum contacts with the forum state.").

## IV.

## CONCLUSION

    For the foregoing reasons, the Court **GRANTS** Powermax's Motion to Dismiss (Doc. 8). This case is hereby **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

SO ORDERED.

SIGNED: January 19, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE