IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AIR VENT, INC. and GIBRALTAR INDUSTRIES, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:22-CV-00516-B |
| POWERMAX ELECTRIC CO., LTD., | § § | |
| Defendant. | § § | |

---

**PLAINTIFFS' RULE 59(E) MOTION FOR
RECONSIDERATION AND BRIEF IN SUPPORT**

---

*/s/ Eric D. Pearson*
Eric D. Pearson
State Bar No. 15690472
eric@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 N. State Highway 161
Suite 450
Irving, Texas 75038
(214) 237-9001 Telephone
(214) 237-9002 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT AND AUTHORITIES ................................................................................... 3

I.   The Court may grant relief from its order under Rule 59(e) .............................. 3

II.  The Court should grant relief because its order was based on a manifest error of law. ..... 4

    A.    Plaintiffs were required only to make out a prima facie case of specific jurisdiction and any "close call" should have been resolved in their favor ................................. 4

    B.    The Court misapplied the *Calder* "effects test," which applies only to intentional torts. ...................................................................................................... 6

III.  The Court's order is based on a manifest error of fact and law because the totality of the evidence makes out a *prima facie* case that Plaintiffs' claims arise from or relate to Powermax's forum contacts. .......................................................................... 11

    A.    The totality of the evidence makes out a prima facie case that Plaintiffs' claims arise from or relate to Powermax's forum contacts. ............................................ 11

    B.    The Court's order is inconsistent with case law holding that even a single forum contact may establish jurisdiction when the plaintiff's claims arise form that contact as here. ....................................................................................... 17

    C.    The Court's order is inconsistent with the Fifth Circuit's "but for" test for determining relatedness. ................................................................................ 18

IV.  The Court's order is based on a manifest error of law because it misapplies the U.S. Supreme Court's holding in *Ford Motor Co. v. Montana Eighth Judicial District Court*. ...................................................................................................................... 19

V.  The Court's order should be set aside because the failure to do so will cause Plaintiffs a manifest injustice. ................................................................................................... 20

CONCLUSION AND PRAYER ......................................................................................... 22

CERTIFICATE OF SERVICE ........................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Registry of Radiologic Technologies v. Garza*
    512 F. Supp. 2d 902 (S.D. Tex. 2007) ................................................................... 21

*Anness v. General Electric Co.*
    No. 4:13-cv-935-0, 2014 WL 12580494 (N.D. Tex. June 5, 2014)........................... 11

*Asahi Metal Industry Co. v. Superior Court of California, Solano County*
    480 U.S. 102 (1987).................................................................................................. 2

*Briones v. Nationwide Property and Casualty Ins. Co.*
    No. DR-15-CV-085, 2016 WL 8229285 (W.D. Tex. March 30, 2016) ................... 16

*Brown v. Harris*
    No. A-11-CA-683 LY, 2011 WL 13235052 (W.D. Tex. Sept. 20, 2011) ................. 6

*Bullion v. Gillespie*
    895 F.2d 213 (5th Cir. 1990) ........................................................................... 4, 12

*Bush v. Adams*
    No. 07-4936, 2008 WL 4791647 (E.D. Pa. Nov. 3, 2008) .................................. 7, 9

*Calder v. Jones*
    465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984)................................... 6-9, 11

*Carraba v. Morgat*
    No. 2:12-6342, 2014 WL 229280 (D. N.J. Jan. 17, 2014)...................................... 9

*CollegeSource, Inc. v. AcademyOne, Inc.*
    653 F.3d 1066 (9th Cir. 2011) ............................................................................ 11

*CoStar Group, Inc. v. Loopnet*
    106 F. Supp. 2d 780 (D. Md. 2000) ..................................................................... 8

*EFCO Corp. v. Aluma Systems, USA, Inc.*
    983 F. Supp. 816 (S.D. Iowa 1997) ..................................................................... 7

*Epstein v. Gray Television, Inc.*
    474 F. Supp. 2d 835 (W.D. Tex. 2007)................................................................ 8

*Ewing v. Empire Capital Funding Group, Inc.*
    No.17cv2507, 2018 WL 3629923 (S.D. Cal. July 20, 2018).................................. 6

*Feehan v. a.k.a. Denise Schwartz*
  No. 1:19-CV-1169-RP, 2021 WL 8055649 (W.D. Tex. Aug. 9, 2021) .................................. 10

*Ford Motor Co. v. Montana Eighth Judicial District Court*
  141 S. Ct. 1017 (2021).............................................................................................18-20

*Garden City Boxing Club, Inc. v. Collins*
  No. B-05-260, 2006 WL 2037567 (S.D. Tex. July 18, 2006) ............................................ 3, 21

*Gardiner v. Texas Hobby Auto Auction*
  No. H-06-198, 2007 WL 9811112 (S.D. Tex. March 8, 2007) .......................................... 3, 21

*Hale v. Townley*
  45 F.3d 914 (5th Cir.1995) ................................................................................................ 3

*iFLYHoldings LLC v. Indoor Skydiving Germany GMBH*
  No. 2:14-cv-01080, 2015 WL 11120807 (E.D. Tex. Oct. 2, 2015)....................................... 10

*IMAPizza, LLC v. At Pizza Limited*
  334 F. Supp. 3d 95 (D. D.C. 2018) ..................................................................................... 5

*Int'l Truck and Engine Corp.*
  259 F. Supp. 2d 553 (N.D. Tex. 2003) ............................................................................ 4, 16

*J. McIntyre Machinery Ltd. v. Nicastro*
  564 U.S. 873 (2011).......................................................................................................... 2

*Janvey v. Indigo Trust*
  No. 3:10-CV-0844-N, 2012 WL 13093944 (N.D. Tex. Dec. 14, 2012)................................. 18

*Jones v. Stephens*
  998 F. Supp. 2d 529 (N.D. Tex. Feb. 6, 2014) ............................................................ 3, 21, 22

*K2 Pure Solutions, LP v. Khan*
  No. 5:12cv2558, 2012 WL 6553093 (N.D. Ohio Dec. 14, 2012)........................................... 6

*Kinder Morgan Treating, LP v. Pantheon Resources, PLC*
  No. 4:21-CV-00368, 2021 WL 8263457 (S.D. Tex. July 1, 2021) ......................................... 6

*Lavaspere v. Niagara Mach. & Tool Works, Inc.*
  910 F.2d 167 (5th Cir. 1990) ......................................................................................... 3, 16

*McFadin v. Gerber*
  587 F3d 753 (5th Cir. 2009) ............................................................................................ 15

*McGillivray v. Countrywide Home Loans, Inc.*
  360 Fed. App'x 533 (5th Cir.2010) ......................................... 3

*Milltronics, Inc. v. Hawk America, Inc.*
  No. 3:92-CV-761, 1993 WL 719554 (N.D. Tex. Nov. 23, 1993) ........................... 17

*Moore v. Institute for Wealth Advisors, Inc.*
  No. 3:19-CV-2601, 2020 WL 6576166 (N.D. Tex. Aug. 3, 2020) ........................ 15

*Morgan v. Trokamed GmBH*
  341 F. Supp. 3d 953 (W.D. Wisc. 2018)....................................... 9

*Personalized Brokerage Servs., LLC v. Lucius*
  Civ. No. 05-1663, 2006 WL 208781 (D. Minn. Jan. 26, 2006).................................. 5

*Poly Trucking, Inc. v. John R. Reed, Inc.*
  No. 3:06-cv-1463-B, 2007 WL 9711743 (N.D. Tex. March 12, 2007 (Boyle, J.) .................... 8

*Polyquest, Inc. v. Vestar Corp., LLC*
  No. 7:13-CV-23-F, 2014 WL 496494 (E.D.N.C. Feb. 6, 2014) ............................. 18

*Prejean v. Sonatrach, Inc.*
  652 F.2d 1260 (5th Cir.1981) ........................................ 18

*Pruneda v. Honghua Int'l Co.*, Ltd.
  Civil No. 5:15–CV–724–OG, 2016 WL 8849823 (W.D. Tex. Aug. 31, 2016)........................ 4

*Religious Technology Center v. Liebreich*
  339 F.3d 369 (5th Cir. 2003) ......................................... 17

*Renick v. Manfredy*
  238 F.3d 248 (3d Cir. 2001)........................................ 7

*Ruston Gas Turbines, Inc. v. Donaldson Co.*
  9 F.3d 415 (5th Cir.1993) ................................. 4, 11, 17

*Shippitsa Limited v. Slack*
  No. 3:18-CV-1036-D, 2019 WL 2372687 (N.D. Tex. June 5, 2019)........................ 8

*Siddhar v. Varadharajan*
  No. 4:13-CV-1933, 2014 WL 2815498 (S.D. Tex. June 20, 2014)........................... 8

*Southwestern Athletic Conference v. Urban Edge Network, LLC*
  2022 WL 17721584 (N.D. Ala. Dec. 15, 2022)......................................... 8

*Templet v. HydroChem Inc.*
   367 F.3d 473 (5ᵗʰ Cir. 2004) ................................................................................. 3

*Thistlethwaite v. Elements Behavioral Health, Inc.*
   No. 14cv00138, 2014 WL 11514671 (D. N.mn. July 2, 2014) ................................ 5

*Vizant Technologies, LLC v. Whitchurch*
   97 F. Supp. 3d 618 (E.D. Pa. April 1, 2015) ...................................................... 11

*Wausau Underwriters Ins. Co. v. Osborne Transformer Corp.*
   No. 11-CV-819A, 2013 WL 6328104 (W.D.N.Y. Dec. 5, 2013) ............................ 5

*Weisner v. Court of Criminal Appeals*
   No. 3:20-cv-03767, 2021 WL 1760313 (N.D. Tex. April 15, 2021) ......................... 3

*Zumbro, Inc. v. California Natural Prods.*
   861 F. Supp. 773 (D. Minn. 1994) ....................................................................... 8

## Rules

Fed. R. Civ. P. 12(b)(2) ........................................................................ 2, 6, 11, 15

Fed. R. Civ. P. 59(e) .................................................................................. passim

Fed. R. Civ. P. 60(e) ....................................................................................... 1

Plaintiffs Air Vent, Inc. ("AVI") and Gibraltar Industries file Rule 59(e) motion for reconsideration and would respectfully show the Court as follows:

## **FACTUAL BACKGROUND**

AVI is a Delaware corporation with its principal place of business located at 4117 Pinnacle Point Drive, Suite 400, Dallas, Texas 75211.  Dkt-10-1 at ¶2. Defendant Powermax Electric Co., Ltd, Guangdong ("Powermax") is a foreign corporation based in China that designed, manufactured and/or otherwise placed the subject fan motor in the stream of commerce.  *Id.*  AVI is a manufacturer and seller of attic ventilation products.  Some of the products sold by AVI include powered attic ventilation fans.  All powered attic ventilation fans sold by AVI include completed fan motors manufactured by third parties.  Third-party motor manufacturers design, manufacture and sell their motors to AVI as completed units.  Dkt-10-1 at ¶3.

In July 2018, State Farm General Insurance Company filed suit against Gibraltar Industries in California alleging that AVI designed, formulated, produced, made, constructed and assembled a powered attic vent fan (the "Subject Fan") that was installed at the home of its insureds, Kevin and Natasha Chaja.  The Chaja Lawsuit alleged that a defective motor in the Chaja Attic Fan caused a fire that damages the Chaja's home.  Dkt-10-1 at ¶15.  AVI did not design or participate in the design of the attic fan motor (the "Subject Fan Motor") that was alleged to have caused the fire that was the basis of the Chaja Lawsuit.  Rather, the Subject Fan Motor was manufactured by Powermax and was sold to AVI by Powermax and then shipped directly from Powermax to AVI in Dallas, Texas for incorporation into the Subject Fan.  Dkt-10-1 at ¶16.

In the Chaja Lawsuit, AVI filed cross-claims against Powermax.  Powermax filed a special appearance and a motion to dismiss for lack of jurisdiction.  The California court applied the "stream of commerce plus" test rather than the "stream of commerce" test utilized by courts within

the Fifth Circuit.  The California court also relied on Justice O'Connor's plurality opinion in *Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102 (1987) rather than Justice Brennan's concurrence.  And it accepted the plurality opinion of Justice Kennedy in *J. McIntyre Machinery Ltd. v. Nicastro,* 564 U.S. 873 (2011) rather than the reasoning of Justice Breyer's concurring opinion, which the Fifth Circuit follows.  Applying the stricter "stream of commerce plus" test, the California court held that it lacked jurisdiction over Powermax because it lacked purposeful contact with California. Exhibit B.

Following the California state court's dismissal, Plaintiffs settled the Chaja Lawsuit and filed this suit seeking contribution and indemnity for the damages caused to them in defending and settling the case. Powermax filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Dkt-9.  Plaintiffs filed a Response to the Motion and Powermax filed a Reply Brief out of time.  Dkt-9; Dkt-10.  After analyzing personal jurisdiction, the Court concluded that "***Powermax has purposefully availed itself with Texas and should have reasonably anticipated being haled into court here***" and that "***the quantity and frequency of Powermax motors shipped to Texas suggests that jurisdiction is proper.***"  Dkt-14 at 8-9 (emphasis added). Despite this finding of purposeful availment, the Court granted Powermax's Motion after finding -- in what it called a "close call" -- that Powermax's forum contacts did not give rise to Plaintiffs' causes of action because "the brunt of the harm suffered by Plaintiffs occurred in California."  Dkt-14 at 11. As set forth below, this ruling was based on a manifest error of law and fact and must be set aside in order to prevent manifest injustice to Plaintiffs.  Fed. R. Civ. P. 59(e).

## ARGUMENT AND AUTHORITIES

**I.      The Court may grant relief from its order under Rule 59(e).**

A court may alter or amend a final judgment under Rule 59(e).  Under Rule 59(e), "the court must strike a balance between finality of judgments and the need to render just decisions based on all of the facts."  *Gardiner v. Texas Hobby Auto Auction*, No. H-06-198, 2007 WL 9811112, at \*1 (S.D. Tex. March 8, 2007); *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ("This Court has identified two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts. The task for the district court is to strike the proper balance between these competing interests.").  A court should grant relief under Rule 59(e) when there has been a manifest error of law or fact.  *Weisner v. Court of Criminal Appeals*, No. 3:20-cv-03767, 2021 WL 1760313, at \*2 (N.D. Tex. April 15, 2021).

Relief under Rule 59(e) is also appropriate where "necessary to prevent manifest injustice." *Garden City Boxing Club, Inc. v. Collins*, No. B-05-260, 2006 WL 2037567, at \*2 (S.D. Tex. July 18, 2006).  Such relief is proper on this basis even if relief is based on an argument that could have been made earlier.  *Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. Feb. 6, 2014). Because Rule 59(e) is not subject to the limitations of Rule 60(b), courts have considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under the former rule.  *Lavaspere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990); *see also  McGillivray v. Countrywide Home Loans, Inc.,* 360 Fed. App'x 533, 537 (5th Cir.2010) (citing *Hale  v.  Townley,* 45  F.3d  914,  921  (5th Cir.1995)) ("A district court has considerable discretion in deciding whether to grant or deny a Rule 59(e) motion.").

## II. The Court should grant relief because its order was based on a manifest error of law.

### A. Plaintiffs were required only to make out a prima facie case of specific jurisdiction and any "close call" should have been resolved in their favor.

In response to Powermax's Motion to Dismiss, Plaintiffs were required only to make out a *prima facie* case of personal jurisdiction.  And in determining whether Plaintiffs met this burden, the Court was and is required to resolve all factual disputes in Plaintiffs' favor.  As one court has explained:

> In satisfying the above burden, when the jurisdictional issue is to be decided by the court on the basis of facts contained in affidavits, a party need only present facts sufficient to constitute a prima facie case of personal jurisdiction."  "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists.

*Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); *see also Pruneda v. Honghua Int'l Co.*, Ltd., Civil No. 5:15–CV–724–OG, 2016 WL 8849823, at *2 (W.D. Tex. Aug. 31, 2016) ("Plaintiffs ultimately bear the burden of establishing contested jurisdictional facts by a preponderance of the evidence, but in the absence of a pretrial evidentiary hearing, they are 'required to present only a prima facie case for personal jurisdiction' and 'all factual conflicts are resolved in favor of the party seeking to invoke the court's jurisdiction.'"); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993) ("When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction."); *Int'l Truck and Engine Corp.*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) ("Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists.").

4

After determining that "***Powermax has purposefully availed itself with Texas and should have reasonably anticipated being haled into court here***" (Dkt-14 at 8) and admitting that personal jurisdiction was a "close call" (Dkt-14 at 11), the Court nonetheless granted Powermax's motion to dismiss.  The Court's order was based on a manifest error of law for two reasons. First, it appears that the Court required Plaintiffs to prove the existence of jurisdiction beyond just a *prima facie* case and failed to adhere to the rule that all conflicts in the evidence were to be resolved in their favor.  Given the lenient *prima facie* standard applying to Plaintiffs' evidence of jurisdiction, as well as the requirement that all conflicts be resolved in its favor, any "close call" should have been decided in favor of Plaintiffs.  *See, e.g., Personalized Brokerage Servs., LLC v. Lucius*, Civ. No. 05-1663, 2006 WL 208781, *1 (D. Minn. Jan. 26, 2006) ("The Court acknowledges that the question of personal jurisdiction is a close call, but in such cases, the Court must resolve any doubts in favor of jurisdiction."); *Wausau Underwriters Ins. Co. v. Osborne Transformer Corp.,* No. 11-CV-819A, 2013 WL 6328104, at *9 (W.D.N.Y. Dec. 5, 2013) ("Although this is a close call, resolving all ambiguities in Wausau's favor and recognizing that its burden at this stage is only to make a *prima facie* showing of personal jurisdiction, I conclude that Wausau has established that the exercise of personal jurisdiction over Osborne comports with Due Process."); *IMAPizza, LLC v. At Pizza Limited*, 334 F. Supp. 3d 95, 116 (D. D.C. 2018) ("Personal jurisdiction in this case is a close call. When IMAPizza is given the benefit of all disputed facts and reasonable inferences, it has eked out a *prima facie* showing of personal jurisdiction."); *Thistlethwaite v. Elements Behavioral Health, Inc.,* No. 14cv00138, 2014 WL 11514671, at *6 (D. N.mn. July 2, 2014) ("this Court had a difficult time reaching its final decision because the issue of personal jurisdiction over Defendant Elements was a close call. However, Plaintiffs' burden at the personal jurisdiction stage is not great, and they have made

a *prima facie* showing of personal jurisdiction."); *Ewing v. Empire Capital Funding Group, Inc.*, No.17cv2507, 2018 WL 3629923, at *1 (S.D. Cal. July 20, 2018) ("It's a close call here, but resolving the conflict in Ewing's favor based on his sworn affidavit, the Court finds at this stage, he's met his burden to show a prima facie case of personal jurisdiction and Defendants haven't explained why it's unreasonable to ask them to defend here."); *K2 Pure Solutions, LP v. Khan*, No. 5:12cv2558, 2012 WL 6553093, at *2 (N.D. Ohio Dec. 14, 2012) ("Upon review, the Court finds that the exercise of personal jurisdiction in this matter is a close call. However, viewing the evidence in a light most favorable to K2, the exercise of jurisdiction is proper."). By failing to apply the proper burden of proof and evidentiary standard, the Court committed a manifest error of law and fact.

> **B.** **The Court misapplied the *Calder* "effects test," which applies only to intentional torts.**

In its Motion, Powermax stated that there was "no connection – let alone a substantial one—exists between Powermax and Texas regarding **the use of the product at issue**, which Plaintiff claimed **caused their injury.**" Dkt-9 at 8; Dkt-14 at 10 (emphasis added). This focus on the Chaja's use of the product and the resulting fire that occurred in California was misplaced. In ruling on a 12(b)(2) motion, courts are instead required to focus on the connection between a **plaintiff's causes of action** and the Defendant's forum contacts. *Kinder Morgan Treating, LP v. Pantheon Resources, PLC*, No. 4:21-CV-00368, 2021 WL 8263457, at *7 (S.D. Tex. July 1, 2021) (court must determine "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts"); *Brown v. Harris*, No. A-11-CA-683 LY, 2011 WL 13235052, at *3 (W.D. Tex. Sept. 20, 2011) (same).

Following Powermax's lead, this Court improperly relied on the "effects test" established by the court in *Calder v. Jones*, 465 U.S. 783, 789 (1984) which focuses on where the "brunt of

the harm" caused by the Defendant was felt.  Dkt-14-11.  Applying *Calder*, after determining that

the "relatedness" issue was a "close call," the Court decided the close call in Powermax's favor

because "the brunt of the harm" suffered by Plaintiffs occurred in California:

> While the Court notes that this is a close call given Plaintiffs' residence and
> Powermax's, albeit indirect, sales in Texas, the Court finds "the brunt of the harm"
> suffered by Plaintiffs occurred in California. *See Calder v. Jones*, 465 U.S. 783,
> 789 (1984). Thus, the Court finds Powermax's contacts are not sufficiently related
> to Plaintiffs' suit to warrant specific personal jurisdiction.

Dkt-14 at 11.  And consistent with its focus on where the "brunt of the harm" occurred, the Court

based its conclusion on the following facts:

- the fire caused by Plaintiffs' fan occurred in California;

- The Chaja lawsuit was filed in California;

- Plaintiffs defended and settled the Chaja lawsuit in California.

Dkt-14 at 11.

However, the *Calder* "direct effects" test focusing on where the "brunt of the harm" was

suffered is ***wholly inapplicable*** to Plaintiffs' causes of action, which are indemnity and contract

claims.  Dkt-1.  That test is limited to ***intentional torts***, typically claims for patent infringement,

defamation or libel.  In fact, the first element of *Calder's* "effects test" is whether the defendants

have been accused of committing an "intentional tort." *See Bush v. Adams*, No. 07-4936, 2008 WL

4791647, at *13 (E.D. Pa. Nov. 3, 2008); *see also Renick v. Manfredy*, 238 F.3d 248, 258 (3d Cir.

2001) (Describing *Calder* as "where the Supreme Court set forth the 'effects test' for determining

personal jurisdiction over nonresident defendants who allegedly committed an intentional tort

outside the forum."); *EFCO Corp. v. Aluma Systems, USA, Inc*., 983 F. Supp. 816, 821 (S.D. Iowa

1997) ("Two conditions must be met for the *Calder* effects test to apply. First, the defendant's act

must be intentional and not merely negligent.").  As a result, as this Court has recognized, ***Calder***

***does not apply to claims other than intentional tort claims***:

> Plaintiffs take a stab at establishing specific jurisdiction by arguing that Reed is subject to jurisdiction under the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984) because the brunt of the harm it suffered was felt in Texas. ***The "effects" test generally only applies in cases where intentional torts are alleged, however***.  Because Plaintiffs here assert mere negligence, the *Calder* "effects" test does not apply.[1]

*Poly Trucking, Inc. v. John R. Reed, Inc.*, No. 3:06-cv-1463-B, 2007 WL 9711743, at *2 n.3  (N.D.

Tex. March 12, 2007 (Boyle, J.) (citations omitted) (emphasis added); *see also Zumbro, Inc. v.*

*California Natural Prods.*, 861 F. Supp. 773, 782 (D. Minn. 1994) (observing that the *Calder*

effects test "generally has been limited to intentional torts"); *Southwestern Athletic Conference v.*

*Urban Edge Network, LLC*, 2022 WL 17721584, at *3 n.2 (N.D. Ala. Dec. 15, 2022) ("This three-

part test, commonly referred to as the *Calder* 'effects' test, is best understood as a substitute for

purposeful availment that is to be applied in a limited category of cases involving an intentional

tort."); *CoStar Group, Inc. v. Loopnet*, 106 F. Supp. 2d 780, 785 (D. Md. 2000) ("Since *Calder*,

courts have carefully limited the application of the effects test to cases where the nonresident

defendant commits an intentional tort knowing the conduct will cause harm to the plaintiff in the

forum state."); *Shippitsa Limited v. Slack*, No. 3:18-CV-1036-D, 2019 WL 2372687, at *5 (N.D.

Tex. June 5, 2019) ("Although *Calder* itself involved a defamation claim, the Fifth Circuit has

extended its analysis to other intentional torts."); *Siddhar v. Varadharajan*, No. 4:13-CV-1933,

2014 WL 2815498, at *4 (S.D. Tex. June 20, 2014) ("When analyzing intentional tort claims, such

as defamation, for specific jurisdiction, the Fifth Circuit applies the "effects test" first formulated

in *Calder v. Jones*."); *Epstein v. Gray Television, Inc.*, 474 F. Supp. 2d 835, 840 (W.D. Tex. 2007)

---

[1] Here, Plaintiffs have asserted no intentional tort claims.  Rather, their claims are for statutory indemnity, contractual indemnity, common law indemnity, breach of contract, breach of implied warranty and negligence.  Dkt-1.

("The Supreme Court established an "effects" test for jurisdiction for intentional torts in *Calder v. Jones*."). Finally, the *Calder* effects test is inapplicable because it is an *alternative* to the three-part test under which the Court ostensibly analyzed the jurisdictional issue here. Dkt-14 at 4. *See Bush v. Adams*, No. 07-4936, 2008 WL 4791647, at *10 (E.D. Pa. Nov. 3, 2008) ("In addition to the traditional three-part inquiry into specific jurisdiction, in limited circumstances the federal courts have used an alternative analysis that looks to the effects that a defendant's conduct has upon the plaintiff. *See Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984)"); *Morgan v. Trokamed GmBH*, 341 F. Supp. 3d 953, 956 n.2 (W.D. Wisc. 2018) (describing the *Calder* effects test as "an alternative test for specific jurisdiction that the Supreme Court has applied in the context of intentional torts."); *Carraba v. Morgat*, No. 2:12-6342, 2014 WL 229280, at *8 (D. N.J. Jan. 17, 2014) ("As an alternative mode of analysis, I pause to discuss the 'effects test,' a jurisdictional doctrine peculiar to intentional torts that may support specific jurisdiction.").

As set forth above, the *Calder* effects test and its focus on the location of the "brunt of the harm" does not apply to the claims involved in this case. The Court therefore erred in applying that test. More importantly, its application of *Calder* led the Court to stray from focusing its analysis on the substance of Plaintiff's causes of action and their relation to Powermax's forum contacts as required under established law. Here, all of Plaintiffs' causes of action arise from Powermax's shipment of a defective fan motor directly to Plaintiffs' Dallas facility where it was installed into an attic vent fan sold from Dallas to a retailer or distributor and then ultimately installed in the Chaja's home. And the Powermax fan motor was purchased pursuant to a purchase order, sent from Dallas, providing for contractual indemnity. Dkt-1 at ¶¶10-15. All of Plaintiffs' claims are for indemnity or breach of contract and are based on the Texas contacts identified above. As such, under the applicable law that focuses on the relationship between a defendant's forum

contacts and the plaintiff's specific causes of action, the aforementioned contacts are more than enough to establish personal jurisdiction, especially where the Court has already concluded that "***Powermax has purposefully availed itself with Texas and should have reasonably anticipated being haled into court here.***" Dkt-14 at 8 (emphasis added).

The Court erred in applying the *Calder* effects test to the claims here, none of which involve intentional torts. Application of *Calder* led the Court to artificially inflate the importance of the California forum contacts -- the fire, the Chaja lawsuit, and Plaintiffs' settlement of that suit -- and minimize the importance of the Texas forum contacts. But those Texas contacts -- including shipping millions of fan motors to Texas, accepting purchase orders from a Texas resident and sending invoices to a Texas resident[2] -- form the very basis of Plaintiffs' indemnity and contract claims. As between Plaintiffs and Powermax, it is the Texas contacts -- not fortuitous events occurring in California[3] -- that form the basis of their relationship and the claims asserted by Plaintiffs in their Complaint. The Court's disregard of these contacts and focus on where the "brunt of the harm" was felt was a manifest error of law.

Finally, even if the *Calder* effects test applied here, the Court erred in its application of the test. Under *Calder*, courts are to focus on where the brunt of the harm ***to the plaintiff*** occurred. *See, e.g., Feehan v. a.k.a. Denise Schwartz*, No. 1:19-CV-1169-RP, 2021 WL 8055649, at *3 (W.D. Tex. Aug. 9, 2021) (proper question under *Calder* is whether "the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm

---

[2] The extensive forum contacts with Texas are set forth in more detail in Section III below.

[3] To be clear, Plaintiffs assert that jurisdiction would also be proper in California. However, this does not mean that jurisdiction is not also proper in this Court. *See, e.g., iFLYHoldings LLC v. Indoor Skydiving Germany GMBH*, No. 2:14-cv-01080, 2015 WL 11120807, at *6 n.8 (E.D. Tex. Oct. 2, 2015) ("The Court does not consider whether ISG is subject to, or consented to, jurisdiction in Arizona because it does not affect whether ISG is subject to jurisdiction in Texas. ISG may well be subject to personal jurisdiction in more than one State.").

to the plaintiff").  Here, that was Texas, where Plaintiffs suffered purely economic damage from paying their lawyers to defend the Chaja lawsuit and paying to settle that suit.  *See, e.g., CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (Discussing *Calder* effects tests and stating that "[w]e have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *Vizant Technologies, LLC v. Whitchurch*, 97 F. Supp. 3d 618, 632 (E.D. Pa. April 1, 2015) ("according to plaintiffs' allegations, this conduct caused economic, reputational, and other harm to Vizant, a company headquartered in Pennsylvania. It necessarily follows that Vizant 'felt the brunt of the harm in [Pennsylvania] such that [Pennsylvania] can be said to be the focal point of the harm.'").  While the Chaja's clearly suffered their harm in California, that is not the issue; the issue is where Plaintiffs herein suffered their harm.  Even if *Calder* somehow applied, it would still support this Court's exercise of specific jurisdiction over Powermax.

### III.    The Court's order is based on a manifest error of fact and law because the totality of the evidence makes out a *prima facie* case that Plaintiffs' claims arise from or relate to Powermax's forum contacts.

#### A.    The totality of the evidence makes out a prima facie case that Plaintiffs' claims arise from or relate to Powermax's forum contacts.

Rather than applying *Calder* and focusing on where the "brunt of the harm" occurred, courts assessing specific jurisdiction in cases not involving intentional torts are required to determine whether the plaintiff's causes of action "arise from or relate to" the defendant's forum contacts.  *Anness v. General Electric Co.,* No. 4:13-cv-935-0, 2014 WL 12580494, at *3 (N.D. Tex. June 5, 2014) ("A court may exercise specific jurisdiction over a nonresident defendant if the lawsuit arises from or relates to the   defendant's contacts with   the forum State."); *Ruston  Gas Turbines, Inc. v. Donaldson Co*., 9 F.3d 415, 418 (5th Cir.1993) ("A state exercises specific jurisdiction over a non-resident defendant when the lawsuit arises from or relates to the

defendant's contact with the forum state."). And in making this determination, courts must be mindful of the fact that a plaintiff is only required to make a *prima facie* showing of jurisdiction and that the courts are required to resolve all factual disputes in the plaintiff's favor. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); *Ruston*, 9 F.3d at 418.

Applying the proper legal analysis, Plaintiffs clearly made out a *prima facie* case for specific jurisdiction. In their Response to Defendant's 12(b)(2) Motion, Plaintiffs asserted that:

> The Chaja Lawsuit alleged that a defective motor in the Chaja Attic Fan caused a fire that damages the Chaja's home. Exhibit A at ¶15. AVI did not design or participate in the design of the attic fan motor (the "Fan Motor") that was alleged to have caused the fire that was the basis of the Chaja Lawsuit. Rather, the Fan Motor was manufactured by Powermax and was sold to AVI by Powermax and then shipped directly from Powermax to AVI in Dallas, Texas **for incorporation into the Chaja Attic Fan**. Dkt-10 at 1 (emphasis added).

> DMA has admitted that "***Powermax manufactures the motors and ships them directly to AVI and AVI installs them in the fans***." Dkt-10 at 3.

> Powermax motors were designed, manufactured and sold to AVI for use in its attic fans and were intended for distribution throughout the United States. Dkt-10 at 4.

> All Powermax manufactured motors, regardless of whether they were invoiced to AVI by Powermax or DMA, were shipped directly from the Powermax manufacturing facility in Guangdong China to AVI' facilities in Dallas, Texas and were intended for sale and distribution throughout the United States. Dkt-10 at 4.

> In about 2012, representatives from DMA and Powermax met with AVI's representatives (Tracy Straughan and John Wagner) at the Powermax manufacturing facility in Guangdong China in order to give AVI's representatives a tour of the manufacturing facility where all motors sold to AVI from Powermax were being manufactured. Exhibit A at ¶10. AVI's representatives explained that AVI were based in Dallas, Texas, that they were a large purchaser of Powermax fan motors **and incorporated those fan motors into their attic fans** sold throughout the United States. Dkt-10 at 5.

> Powermax knowingly shipped millions of fan motors to AVI in Texas; Dkt-10 at 19.

> AVI's representatives met with Powermax representatives at the Powermax factory in China and discussed AVI's ongoing purchase of Powermax fan motors for use in its powered attic ventilation fans assembled in Dallas. Dkt-10 at 19.

> Millions of fans were sold by Powermax to Plaintiffs. Dkt-10 at 3, 19.

More than 90,000 of the fans were "invoiced directly from Powermax to Plaintiffs."  Dkt-1 at 4.  Dkt-10 at 4; Dkt-10 at Exhibit A-3.[4]

Despite these allegations, the Court stated that "Plaintiffs do not allege that the fan, with Powermax's motor, was manufactured in Texas."  Dkt-14 at 11.  Although Plaintiffs believe that such a conclusion was implicit in the statements referenced above, for clarity's sake, Plaintiffs have submitted the supplemental Declaration of Brad Holland which unequivocally states that:

> The Chaja lawsuit alleged that a fire occurred in the Chaja residence as the result of the failure of an attic vent fan manufactured by AVI (the "Subject Fan").  AVI did not design or participate in the design of the attic fan motor that it believes caused the fire that was the basis of the Chaja Lawsuit (the "Subject Fan Motor").  Rather, the Subject Fan Motor was manufactured by Powermax and was sold to AVI by Powermax and then shipped directly from Powermax to AVI in Dallas, Texas for incorporation into the Subject Fan.  AVI manufactures all of its attic vent fans in Dallas.  As part of the manufacturing process, AVI installs fan motors received from Powermax into the attic vent fans at its Dallas facility.  Here, the Subject Fan was manufactured in Dallas, Texas.  And the installation of the Subject Fan Motor into the Subject Fan occurred at AVI's Dallas facility.

Exhibit A at ¶13.

The Court's order also stated that  Plaintiffs did not allege that "the Chaja's fan was purchased in Texas."  Dkt-14 at 11.  Again, Plaintiffs believe that such a conclusion was implicit in the statements referenced above regarding the sale and distribution of its attic vent fans.  But to erase any doubt, Plaintiffs have submitted the supplemental Declaration of Brad Holland stating:

> All of AVI's attic fans are sold to end-users, retailers or distributors from AVI's Dallas facility.  All purchase orders for AVI's attic vent fans are received and processed by AVI at its Dallas facility.  Payment for all attic vent fans sold by AVI must be made to AVI at its Dallas, Texas location.  Here, the Subject Fan was sold from AVI's Dallas office pursuant to a purchase order received and processed by AVI in Dallas.  Payment would have been made to AVI in Dallas.  The Subject Fan was shipped directly from Dallas, Texas to a retailer, distributor or end-user and was eventually installed in the Chaja residence.

---

[4] It appears the Court overlooked these allegations when it wrongly concluded that "Powermax never directly contracted with or sold motors to Plaintiffs."  Dkt-14 at 2.

Exhibit A at ¶14.

It is important to note that all of the representations made to Plaintiffs about the Powermax fan motors – including that they complied with UL requirements and were free from defects – were made to Plaintiffs in Dallas, Texas.  Exhibit A at ¶¶7, 8, 11, 12.  The contracts upon which Plaintiffs base their breach of contract and contractual indemnity claims were signed with the Dallas-based Plaintiffs and provided for the shipment of Powermax's fan motors directly to Plaintiffs in Dallas.  Dkt-1 at ¶¶4-6.  As the Court noted in its order, "the invoices themselves also provide a sufficient basis for Powermax to reasonably foresee its products being sold in Texas.  The invoices, on Powermax letterhead, between Powermax and DM Asia, include a 'port of discharge' of Dallas."  Dkt-14 at 8.  The parts numbers on the invoices were parts numbers for specific parts whose design specifications were created by AVI in Dallas, Texas.  Exhibit A at ¶11.  And the vast majority of the Purchase Orders contained a choice of law provision selecting Texas law. Exhibit A at ¶12.

All of Plaintiffs' claims for indemnity and breach of contract are based on Powermax's shipment to Plaintiffs in Dallas of a defective fan motor that it knew was going to be incorporated into Plaintiffs' attic fans in Dallas and then shipped from Dallas to retailers and distributors for eventual use throughout the United States.  Exhibit A at ¶¶13-14.  The locus of the relationship between Plaintiffs and Powermax was clearly Texas, not California.  The fact that the Subject Fan Motor failed in California does not change the fact that Plaintiffs' claims arose from Powermax's Texas contacts.  Nor does it change the fact that Plaintiffs' economic damages were suffered in Dallas, Texas, where their principal place of business is located.  In fact, as a result of the many defective fan motors shipped from Powermax into Texas, AVI, with its principal place of business in Texas, suffered millions of dollars in losses through paying expert fees and expenses for fire

14

investigations, paying attorneys' fees and expenses to defend cases in various states and paying to settle claims throughout.  Exhibit A at ¶15.  These damages -- including those incurred in the *Chaja* lawsuit at issue here -- resulted from Powermax selling and shipping defective fan motors into Texas and then breaching its contractual indemnity obligations in Texas.  *Id.*  All of the financial harm suffered by AVI was suffered in Texas, not in the states where the fires occurred.  *Id.*

In summary, all of Plaintiffs' causes of action for indemnity and breach of contract arise from and are related to the following Texas contacts:

- Powermax sold millions of fan motors, including the Subject Fan Motor, to Dallas-based Plaintiffs and shipped those motors directly to Plaintiffs in Dallas;

- Plaintiffs sent Purchase Orders ("POs") for Powermax's fan motors, including the Subject Fan Motor, from Dallas that included Purchase Order Terms and Conditions ("POTCs") providing for indemnity and required the fan motors to be free from defects and compliant with UL regulations;

- Powermax and DM Asia accepted Plaintiffs' POs and shipped millions of fan motors, including the Subject Fan Motor, directly to Texas;

- Plaintiffs manufactured their attic vent fans, including the Subject Fan, in Dallas;

- Plaintiffs installed the Powermax fan motors, including the Subject Fan Motor, into Plaintiffs' attic vent fans in Dallas;

- Powermax was aware that Plaintiffs intended to install the Powermax fan motors into their attic vent fans which would then be sold from Dallas, Texas;

- Plaintiffs installed the Subject Fan Motor into the Subject Fan in Dallas;

- Plaintiffs sold the Subject Fan and Fan Motor from Dallas to a retailer or distributor;

- Plaintiffs shipped the Subject Fan and Fan Motor from Dallas; and

- Plaintiffs suffered hundreds of thousands of dollars in economic damages in Dallas from defending and settling the Chaja lawsuit.

These facts clearly demonstrate that Plaintiffs' claims arise from and are related to Powermax's forum contacts.[5]   In fact, ***the entire relationship between the parties herein was centered in Dallas, Texas***.  That is where the POs were issued, where the POTCs were issued, where the attic fan motors were ordered, where the motors were shipped by Defendants, where the motors were installed and where the motors were shipped by AVI to the purchaser.

Under Rule 59(e), courts must consider "the need to render just decisions on the basis of all the facts."  *Lavaspere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990); *see also Briones v. Nationwide Property and Casualty Ins. Co.*, No. DR-15-CV-085, 2016 WL 8229285, at *2 (W.D. Tex. March 30, 2016) ("The Defendant has demonstrated that the Court's order granting the Plaintiffs' motion to dismiss without prejudice was entered without the Court being fully apprised of the facts . . .   The Defendant thus has shown a clear error of fact in the basis for the Court's ruling and a valid basis for awarding Rule 59(e) relief.").  The facts set forth in Plaintiff's prior pleadings as supplemented by the Holland Declaration attached hereto comprise "all of the facts."  Once all of the facts are considered, it is clear that Plaintiffs have met their burden to show a *prima facie* case of specific jurisdiction.  And to the extent there is any question about the facts underlying Plaintiffs' assertion of specific jurisdiction, they are required to be

---

[5] In its order, the Court noted that Powermax argued in its Motion that there was "no connection – let alone a substantial one—exists between Powermax and Texas regarding the use of the product at issue, which Plaintiff claimed caused their injury" and that Plaintiffs did not respond to this argument.  Dkt-14 at 10. But this argument misstated the test for personal jurisdiction by focusing on the basis of the Chaja's lawsuit rather than the substance of the instant lawsuit.  Moreover, a party responding to a 12(b)(2) motion only has the burden of raising ***facts*** that support a prima facie showing of jurisdiction.  *See, e.g., Moore v. Institute for Wealth Advisors, Inc.*, No. 3:19-CV-2601, 2020 WL 6576166, at *2 (N.D. Tex. Aug. 3, 2020) ("Where, as here, a non-resident defendant challenges personal jurisdiction with a motion filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Plaintiff need only present *prima facie* evidence to support his burden of demonstrating facts sufficient to support jurisdiction."); *McFadin v. Gerber*, 587 F3d 753, 758 (5th Cir. 2009) ("On a challenge to the court's personam jurisdiction, a plaintiff must make only a prima facie showing of the predicate facts.").  Here, the facts set forth in Plaintiffs' Response demonstrated without a doubt that their claims for indemnity and breach of contract arise from or relate to Powermax's forum contacts with Texas.

resolved in Plaintiffs' favor. *Int'l Truck and Engine Corp. v. Qunitana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) ("Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists.").

**B.    The Court's order is inconsistent with case law holding that even a single forum contact may establish jurisdiction when the plaintiff's claims arise form that contact as here.**

While the multiple acts identified above support a finding that Plaintiffs' claims arise from and are related to Powermax's forum contacts, the Court's order focused on only two forum contacts and held that they were insufficient to support specific jurisdiction:

> The only Texas connection are Plaintiff's principal place of business and receipt of the motors. These two instances alone cannot "connection between the forum and the specific claims at issue."

Dkt-14 at 11. While Plaintiffs believe there were more than just these connections to Texas, as set forth below, even if there were only two connections to Texas, they would be more than enough to establish a *prima facie* case of jurisdiction because it is well-established that even "***[a] single act by the defendant directed at the forum state***, ***therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted***." *See, e.g.*, *Ruston Gas Turbines, Inc. v. Donaldson Co*., 9 F.3d 415, 418 (5th Cir.1993) (emphasis added); *Religious Technology Center v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) ("A single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause of action relates to the act."); *Milltronics, Inc. v. Hawk America, Inc.*, No. 3:92-CV-761, 1993 WL 719554, at *2 (N.D. Tex. Nov. 23, 1993) ("It is well settled that specific jurisdiction may arise . . . incident to the commission of a single act directed at the forum."). It is only "when the act or transaction being sued upon is ***unrelated*** to the defendant's contacts with the forum state" that something more

17

is required. *Ruston*, 9 F.3d at 419 (emphasis added). Here the contacts identified by the Court -- the receipt of the Fan Motor by Plaintiffs at their principal place of business in Dallas, Texas (where it was installed into Plaintiff's Attic Fan before being sold from Dallas) -- gave rise to Plaintiffs' contract and indemnity claims. In concluding that these two contacts were insufficient to establish jurisdiction, the Court failed to apply the law holding that even a single forum contact establishes jurisdiction when the plaintiffs' causes of action arise from that contact as they do here. This manifest error of law supports reconsideration of the Court's order under Rule 59(e).

**C.    The Court's order is inconsistent with the Fifth Circuit's "but for" test for determining relatedness.**

The U.S.. Supreme Court has offered little guidance for how to determine whether a plaintiff's causes of action relate to or arises from a defendant's forum contacts, but federal courts have developed three approaches: the stricter "proximate cause test," the more relaxed "but for" standard or the "substantial connection" approach. *See, e.g., Polyquest, Inc. v. Vestar Corp., LLC*, No. 7:13-CV-23-F, 2014 WL 496494, at *6 (E.D.N.C. Feb. 6, 2014). The Fifth Circuit applies the "but for" test. *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1270 n. 21 (5th Cir.1981) ("[A]n action arises from or relates to contacts if the cause would not have arisen but for those contacts."); *Janvey v. Indigo Trust*, No. 3:10-CV-0844-N, 2012 WL 13093944, at *2 (N.D. Tex. Dec. 14, 2012) ("In the Fifth Circuit, an action arises from or relates to contacts if the cause would not have arisen but for those contacts."). This "but for" test is clearly satisfied here because Plaintiffs' claims for indemnity and breach of contract would not have arisen but for Powermax shipping millions of fan motors to Plaintiffs in Texas, accepting purchase orders for fan motors from Texas and sending invoices for fan motors to Texas. Plaintiffs' claims could not have arisen without these intentional Texas contacts by Powermax, contacts the Court has concluded constitute "purposeful availment" by Powermax such that Powermax "should have reasonably anticipated

being haled into court here." Dkt-14 at 8. In failing to apply the Fifth Circuit's and Northern District's "but for" test for relatedness, the Court committed a manifest error of law.

## IV.     The Court's order is based on a manifest error of law because it misapplies the U.S. Supreme Court's holding in *Ford Motor Co. v. Montana Eighth Judicial District Court*.

As set forth above, the totality of facts demonstrate specific jurisdiction under the Fifth Circuit's and Northern District's "but for" test for relatedness. Despite this fact, the Court found dismissal appropriate under the U.S. Supreme Court's holding in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). But that case actually supports the exercise of jurisdiction here. In *Ford*, Ford argued that only forum contacts that caused the car accidents in question could give rise to jurisdiction. *Id.* at 1023 (Ford "argued that each state court had jurisdiction only if the company's conduct in the State had given rise to the plaintiff's claims. And that causal link existed, according to Ford, only if the company had designed, manufactured, or sold in the State the particular vehicle involved in the accident."). The Supreme Court rejected this argument in favor of a more relaxed "related to" test:

> Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff 's suit and a defendant's activities. . . .  None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing.

*Id.* at 1026 (citations omitted) (emphasis original). As set forth above, the facts adduced by Plaintiffs in their Response more than meet the "related to" standard as interpreted by the Fifth Circuit and Northern District of Texas.

Ignoring *Ford's* lenient standard, this Court analogized the instant case to a case in which the Supreme Court found no jurisdiction would exist, a case involving "a California court [hearing]

19

a claim against Ford brought by an Ohio plaintiff based on an accident occurring in Ohio involving a car purchased in Ohio." Dkt-14 at 10-11; *Ford Motor Co.*, 141 S. Ct. at 1027 n.3. But such a case is far afield from the facts here. Here, a Texas resident has brought a claim in Texas for a product that it purchased in Texas from a foreign supplier. This case is thus much closer to the actual facts in *Ford*, under which the Supreme Court found jurisdiction to exist:

> Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong "relationship among the defendant, the forum, and the litigation"—the "essential foundation" of specific jurisdiction.

*Id.* at 1028. In fact, the case for jurisdiction is stronger here because in *Ford*, only the make and model of vehicles that malfunctioned had been sold in the forum states; the actual vehicles that malfunctioned had not. Here, of course, the Subject Fan Motor that caused the fire in the Chaja's home was sold and shipped to Plaintiffs in Dallas, Texas where it was installed into the Subject Fan. Under the Supreme Court's broad "related to" test articulated in *Ford*, the facts here clearly establish specific jurisdiction over Powermax.[6]

## V. The Court's order should be set aside because the failure to do so will cause Plaintiffs a manifest injustice.

Here, Plaintiffs have alleged that the fire in the Chaja residence was caused by a defect in the Powermax fan motor installed in Plaintiffs' attic fan, an allegation the Court is required to accept as true. After Plaintiffs were sued by the Chaja's insurer in California, they filed cross-

---

[6] Although the vehicles in the *Ford Motor* case malfunctioned in the forum states, the Court did not treat that fact as dispositive. Moreover, the proper inquiry when deciding personal jurisdiction is the relationship between the defendant, the forum and the subject litigation. The Plaintiffs here are AVI and Southington, not the Chajas or their insurer. And the claims are for indemnity and breach of contract. Here, Plaintiffs received the Subject Fan Motor in Dallas and suffered economic damages in Dallas when they were forced to litigate and settle the Chaja suit. Thus, there is a "clear connection" between Plaintiffs' suit and Powermax's forum activities. *Ford Motor Co.*, 141 S. Ct. at 1026.

claims against Powermax.    Applying the more stringent "stream of commerce plus" test, the

California state court found that it lacked jurisdiction over Powermax:

> [T]here is no evidence Powermax sold the product at issue directly to anyone in
> California.   The record shows instead that Powermax sold the fan motors to Air
> Vent in Texas, who sued the motors in Air Vent's products sold in California.   That
> is the stream of commerce alone, not purposeful availment.

Dkt-1 at 9; Exhibit B.  Plaintiffs then re-filed their claims against Powermax in this Court, which

has concluded that "***Powermax has purposefully availed itself with Texas and should have***

***reasonably anticipated being haled into court here.***" Dkt-14 at 8 (emphasis added).  Despite this

purposeful availment, the Court dismissed this case on jurisdictional grounds.

Under Rule 59(e), reconsideration is appropriate in order to prevent "a manifest injustice."

*Garden City Boxing Club, Inc. v. Collins*, No. B-05-260, 2006 WL 2037567, at *2 (S.D. Tex. July

18, 2006); *American Registry of Radiologic Technologies v. Garza*, 512 F. Supp. 2d 902, 904 (S.D.

Tex. 2007).  If this Court does not reconsider its order, it is likely that Plaintiffs will be left without

a forum to pursue their claims since the California state court already dismissed Powermax from

the Chaja suit for lack of personal jurisdiction.  Under these facts, reconsideration is necessary in

order to avoid the manifest injustice that would result from Plaintiffs having no forum for their

claims against Powermax despite overwhelming evidence that it was Powermax's defective fan

motor that caused the fire in the Chaja's home.  And reconsideration is appropriate under these

grounds even if the arguments made herein could have been made previously:

> Respondent does not argue against manifest injustice. . . . [H]e argues only that
> Jones's new argument could and should have been presented before now. . . . Jones
> replies that, irrespective of whether the argument should have been raised before,
> it may now be considered to prevent manifest injustice. The Court agrees for
> several reasons. First, the grounds for granting a 59(e) motion set out in *Benjamin*
> *Moore* are listed in the alternative, such that an argument that does not satisfy
> ground (1) or (2) could nevertheless satisfy the "manifest injustice" ground in (3).
> Second, there is no general definition of manifest injustice; it is a case-by-case
> decision based on equitable considerations.  Third, this Court is required to strike

the proper balance between the need for finality and the need to render a just decision on the basis of "all the facts."

*Jones v. Stephens*, 998 F. Supp. 2d 529, 536 (N.D. Tex. Feb. 6, 2014) (citations omitted).

In assessing claims for reconsideration, Courts must balance the need to avoid manifest injustice with the need for finality of judgments. *Gardiner v. Texas Hobby Auto Auction*, 2007 WL 9811112, at *1 (S.D. Tex. March 8, 2007) ("The court must strike a balance between finality of judgments and the need to render just decisions based on all of the facts."). But this case is in its infancy. There has been no discovery. There has been no trial. There has been no consideration of the merits. As such, the need for finality of judgments does not outweigh the need for the Court to base its decision on all of the facts. Moreover, where, as here, additional facts so clearly support amending a judgment, the need to render a decision based on all of the facts far outweighs any need for finality. *See, e.g., Jones*, 998 F. Supp. 2d at 536 ("this Court is required to strike the proper balance between the need for finality and the need to render a just decision on the basis of 'all the facts.' Because the 2005 appointment order is an indisputable fact that changes the equitable-tolling analysis, the need to render a just decision outweighs the need for finality."). In order to prevent manifest injustice, the Court should amend its order and find that it has personal jurisdiction over Powermax in a case in which the Court has already determined that Powermax purposefully availed itself of the right to do business in Texas and should have reasonably anticipated being haled into court here.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court grant this Motion, reform its Order dismissing the case for lack of jurisdiction, enter an order affirming that it has specific jurisdiction over Powermax and grant Plaintiffs such other and further relief to which they may be justly entitled.

22

Respectfully submitted,

*/s/ Eric D. Pearson*
Eric D. Pearson
State Bar No. 15690472
eric@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 N. State Highway 161
Suite 450
Irving, Texas 75038
(214) 237-9001 Telephone
(214) 237-9002 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on the 30th day of January, 2023, a true and correct copy was sent to all counsel of record.

*/s/Eric D. Pearson*
Eric D. Pearson

23