UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AIR VENT, INC. and GIBRALTAR INDUSTRIES, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-0516-B |
| POWERMAX ELECTRIC CO., LTD., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Air Vent, Inc. and Gibraltar Industries, Inc.'s Motion for Reconsideration (Doc. 15). Because Plaintiffs have demonstrated an error in the Court's Memorandum Opinion & Order (the "Order") necessitating reconsideration, the Motion is **GRANTED.**

### I.

### BACKGROUND

The factual background of this case is presented in detail in the Court's Order dismissing Plaintiffs' Complaint for lack of personal jurisdiction. *See* Doc. 14, Mem. Op. & Order, 1–2. In sum, Plaintiffs seek indemnification from Defendant Powermax Electric Co., LTD. ("Powermax") regarding an insurance suit (the "Chaja Lawsuit"). *Id.* The Chaja Lawsuit involved a residential fire in California caused by a fan manufactured and sold by Plaintiffs. *Id.* at 2. However, Plaintiffs allege that the fan malfunctioned because of a faulty motor, which Powermax manufactured and sold to Plaintiffs. *Id.* In its Order, the Court concluded that while Powermax had created minimum contacts with Texas by selling and shipping its motors to Texas residents, Plaintiffs' suit did not

"sufficiently relate[]" to Powermax's Texas contacts to warrant specific jurisdiction in Texas. *See id.* at 9–11. Plaintiffs now urge the Court to reconsider its Order.

## II.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration, but such a motion may be considered under either Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from a judgment or order. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Whether a motion falls under Rule 59(e) or 60(b) depends on when it was filed. *See id.* In this case, Plaintiffs filed their motion within twenty-eight days of the Court granting Powermax's Motion to Dismiss, so the motion was timely under Rule 59(e). *See* Fed. R. Civ. P. 59(e) (requiring such motion to be filed "no later than 28 days after the entry of the judgment").

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (internal quotation omitted). Reconsideration under Rule 59(e) does not serve as a "vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479. Rather, it serves to correct a manifest error of law or fact, to account for newly discovered evidence, or to accommodate an intervening change in controlling law. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Therefore, it "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

## III.

## ANALYSIS

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). But "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*

Due process has two elements. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction, which is at issue here, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). The Fifth Circuit applies a three-step analysis to determine whether specific personal jurisdiction over a defendant exists:

> (1) whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (alteration omitted).

At the outset, the Court notes, as it did in its previous Order, that "Plaintiffs present[ed] no argument as to how their claims relate[d] to Powermax's Texas contacts" in its Response to Powermax's Motion to Dismiss. *See* Doc. 14, Mem. Op. & Order, 10. "As Plaintiffs ha[d] the burden of demonstrating this Court's jurisdiction, this failure to brief essentially concede[d] the issue of relatedness." *See id.* (citing *Luv N' Care, Ltd.*, 438 F.3d at 469). The Court need not allow Plaintiffs an opportunity to "rebrief" the issue of relatedness simply because they disagree with the Court's decision. *See Templet*, 367 F.3d at 479 ("[A Rule 59(e)] motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").

Thus, the Court will not address arguments Plaintiffs could have previously raised regarding relevant legal precedents the Court should have utilized. Instead, the Court will address Plaintiffs' arguments regarding the Court's Order itself. Plaintiffs argue that "the contacts identified by the Court — the receipt of the Fan Motor by Plaintiffs at their principal place of business in Dallas, Texas . . . — gave rise to Plaintiffs' contract and indemnity claims." Doc. 15, Mot. Recons., 18. The Court agrees and thus **GRANTS** Plaintiffs' Motion for Reconsideration (Doc. 15).

In its Order, the Court focused its analysis on the events which gave rise to Plaintiffs' injury and found these events were not sufficiently related to Powermax's Texas contacts. *See* Doc. 14, Mem. Op. & Order, 10–11. However, the correct focus should have been on *Plaintiffs' claims themselves* and whether they arose out of or related to Powermax's Texas contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (stating that "[w]hen a *controversy* is related to or 'arises out of' a defendant's contacts with the forum," the court may exercise specific personal jurisdiction over a defendant) (emphasis added); *Ford Motor Co. v. Mont. Eighth Jud. Dist.*

*Ct.*, 141 S. Ct. 1017, 1028 (2021) (analyzing how Ford's conduct in the forum states "relate[d] to the *claims* in the[] cases") (emphasis added). Focusing now on Plaintiffs' claims and Powermax's Texas contacts, the Court concludes that Plaintiffs have stated a *prima facie* case for personal jurisdiction.

The purpose of the relatedness inquiry is to provide parties "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp.*, 471 U.S. at 472 (internal alteration omitted). "[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919). "A single act may support specific jurisdiction where the act is directed at residents of the forum, and *the cause of action* relates to the act." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) (emphasis added) (citing *Burger King Corp.,* 471 U.S. at 476 n. 18). Thus, the Court must examine Plaintiffs' claims and determine if Powermax had fair warning that its contacts with Texas may subject it to such claims. *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (explaining that "specific personal jurisdiction is a claim-specific inquiry").

Here, the Court concludes Powermax's contacts provided it sufficient warning of the suit at hand. Plaintiffs bring indemnity, breach of contract, breach of implied warranty, negligence, and strict liability claims. *See* Doc. 1, Compl., ¶¶ 28–48. First, Plaintiffs claim the purchase orders and Texas statutory and common law required Powermax to indemnify Plaintiffs after the fan motor malfunctioned and caused Plaintiffs damages. *See id.* ¶¶ 29, 34, 36. Second, Plaintiffs claim the purchase orders it issued to Powermax included Purchase Order Terms and Conditions that created contractual obligations, which Powermax breached when the fan motor malfunctioned.

*See id.* ¶ 39. Next, Plaintiffs claim Powermax's goods were subject to an implied warranty of merchantability under Texas law which Powermax breached when the fan motor malfunctioned. *See id.* ¶ 43. Finally, Plaintiffs claim "Powermax is liable for the negligent sale, distribution, supply or provision of" the defective fan motor and must pay Plaintiffs' damages under principles of negligence and strict liability. *See id.* ¶¶ 46–47.

These claims all relate to Powermax's Texas contacts. First, the Court considers Plaintiffs' contractual claims[1] and "whether the nonresident's forum contacts were instrumental in the formation of the contract or its breach." *See Lansing Trade Grp., LLC v. 3B Biofuels GmbH & Co., KG,* 612 F. Supp. 2d 813, 821 (S.D. Tex. 2009) (citing *Burger King,* 471 U.S. at 478). Powermax's shipment of allegedly faulty fan motors is "instrumental" to Plaintiffs' breach of contract claim regarding the motor's defect. *See id.*; *see also* Doc. 1, Compl., ¶ 39 ("If the Fan Motor was defective, it was not in compliance with the contractual obligations owed to Plaintiffs by Powermax."). Further, while the Supreme Court rejected the need for a "strict causal relationship between the defendant's in-state activity and the litigation," here, but for Powermax's contractual relationship with Plaintiffs and continuous shipments of motors to Texas, Plaintiffs' breach of contract claim would not exist. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017, 1026 (2021) (explaining that specific jurisdiction does not require "proof that the plaintiff's claim came about because of the defendant's in-state conduct").

---

[1] The parties dispute whether Plaintiffs maintained a direct contractual relationship with Powermax. *See* Doc. 1, Compl., ¶ 39; Doc. 9, Mot. Dismiss Br., 15. However, at this point, "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546 (5th Cir. 1985). Thus, for the purposes of this Motion, the Court will presume a contractual relationship exists between the parties.

The Court also finds Powermax had sufficient fair warning of a contractual indemnity suit in Texas when it purposefully sold thousands of motors to Plaintiffs according to purchase orders that included an indemnity provision. *See* Doc. 1, Compl., ¶ 32. Courts in this circuit have held that similar provisions create specific jurisdiction over claims regarding the breach of those provisions. *See Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921, 923 (5th Cir. 1981) (per curiam) (holding specific jurisdiction is appropriate where a defendant "issued [a] continuing guaranty" to an entity that the defendant knew was located in Houston, Texas, and "[t]he general contract . . . stipulated that it would be governed by the laws of Texas"); *Adhikari v. Daoud & Partners*, 2011 WL 13261998, at *19 (S.D. Tex. Dec. 12, 2011) (finding *Marathon's* reasoning applicable to an indemnification agreement and concluding the "effect of [the defendant's] indemnification agreement was to cause business activity, foreseeable by the [defendant], in the forum state") (internal quotations omitted); *cf. Carpenter v. Exelon Corp.*, 2007 WL 3071998, at *2 & n.5 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (collecting cases which held "an indemnity obligation is not sufficient to establish specific jurisdiction where . . . the claims asserted are not based on a breach of that obligation). Thus, these facts are sufficient to establish that Plaintiffs' contractual claims are related Powermax's forum contacts.

A similar analysis applies to Plaintiffs' breach of implied warranty claim. Under Texas law, to prevail on a claim for breach of implied warranty, Plaintiffs must establish Powermax sold them an unmerchantable product that caused their injury. *See Deeds v. Whirlpool Corp.,* 2016 WL 6070552, at *4 (S.D. Tex. Oct. 17, 2016) (listing the elements of a breach of implied warranty claim). Thus, Powermax's sale and shipment of motors to Plaintiffs, Texas residents, relates to Plaintiffs' claim. *See Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co.,* 2015 WL 2341063, at *10 (N.D. Tex. May 15, 2015) (Fish, S.J.) (finding the defendant could anticipate

being haled into court on a breach of implied warranty claim where the defendant communicated with, visited, and shipped products to a Texas resident).

The Court next turns to Plaintiffs' statutory and common law indemnity claims. A plaintiff is entitled to statutory or common law indemnity from products liability losses when the plaintiff/indemnitee is not independently culpable for the loss. *See* Tex. Civ. Prac. & Rem. Code § 82.002(a); *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 255 (Tex. 2006) (discussing statutory and common law indemnity claims). Plaintiffs are seeking indemnity from losses incurred in the Chaja Lawsuit, which they allege were caused by Powermax's defective motor. See Doc. 1, Compl., ¶¶ 34, 36. Because Powermax shipped the allegedly defective motors to Plaintiffs in Texas, these claims relate to Powermax's Texas contacts.

Finally, the Court finds Powermax could have reasonably anticipated being haled to Texas for a negligence suit. Plaintiffs allege "Powermax is liable for the negligent sale, distribution, supply or provision of a defective product." Doc. 1, Compl., ¶ 47. Powermax's sale and shipment of these allegedly defective motors to Plaintiffs in Texas is sufficient to establish a *prima facie* showing of relatedness. *See Azteca Milling, L.P. v. Great W. Mfg. Co.*, 2017 WL 4698451, at *4 (N.D. Tex. Oct. 19, 2017) (Fitzwater, J.) (finding that because the defendant "supplied, sold, and shipped" product that "may have caused harm to [the plaintiff]," the plaintiff had made a *prima facie* showing of specific jurisdiction for its negligence claim). That the injuries Plaintiffs incurred originated in California does not subvert jurisdiction from this Court, as "the [C]ourt is not asked to determine personal jurisdiction on an injury-specific level," but a claim-specific level. *See Azteca Milling, L.P.*, 2017 WL 4698451, at *4; *see also Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F. Supp. 3d 606, 614 (Pittman, J.) (N.D. Tex. 2022) (finding specific jurisdiction over a defendant regarding a

negligence claim where the injury occurred outside of the forum state but the claim related to the defendant's "business activities in Texas").

As stated in the Court's previous Order, Powermax's Texas contacts consist of selling and shipping thousands of motors to Texas residents over the span of several years. Doc. 14, Mem. Op. & Order, 8–9. Plaintiffs assert claims against Powermax regarding the fans it sold and shipped to Texas. And while the facts underlying Plaintiffs' injury occurred in California, the Court concludes Powermax had fair warning of a suit in Texas after "establishing a long-term association with [a Texas] resident . . . [and] causing economic activity within the forum state." *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 (5th Cir. 2003) (reversing a dismissal on lack of specific jurisdiction where the defendant entered into a contract with a resident of the forum state and "affiliat[ed] itself with an enterprise based primarily in [the forum state]" with "the deliberate aim of entering into a long-standing contractual relationship"); *see also Burger King*, 471 U.S. at 482 (finding specific jurisdiction where a defendant entered a twenty-year franchise agreement with a resident of the forum state).

Because the Court now concludes Plaintiffs have stated a *prima facie* case for specific jurisdiction, the Court must consider whether Powermax showed jurisdiction would be unfair and unreasonable. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). For jurisdiction to be unfair and unreasonable, it must offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. The Court must balance

> (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.

*Cent. Freight Lines Inc.*, 322 F.3d at 384.

Here, the Court cannot conclude asserting jurisdiction over Powermax would be unfair or unreasonable. While the burden on Powermax to litigate in Texas may be substantial, Texas has a strong interest in adjudicating this case as the dispute involves injured Texas residents asserting claims under Texas law. *See Avco Corp. v. Precision Airmotive, Inc.*, 2004 WL 1836959, at *8 (N.D. Tex. Aug. 16, 2004) (Kinkeade, J.) (finding "Texas courts have an interest in adjudicating the controversy" because the plaintiff asserted an indemnity claim under Texas law); *cf. Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987) (noting that the forum state's interests were diminished because the plaintiff was not a forum state resident). "Texas, as forum state, also has an interest in adjudicating a dispute that involves a sale of goods to . . . Texas consumer[s], [Plaintiffs]." *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993). Additionally, Plaintiffs' interest in litigating in Texas is substantial as there appears to be no other forum for their claims. *See* Doc. 9, Mot. Dismiss Br., 6 (noting that the California Superior Court dismissed Powermax from the Chaja Lawsuit for lack of personal jurisdiction); Doc. 15, Mot. Recons., 21 (arguing that Plaintiffs would have no other forum to bring their claims if the Court did not reconsider its Order). For these reasons, the burden Powermax may face by litigating in Texas does not offend traditional notions of fair play and substantial justice. *See Wien Air Alaska, Inc,* 195 F.3d at 215 ("[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant.").

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Reconsideration (Doc. 15). Upon reconsideration, the Court concludes that Plaintiffs have shown a *prima facie* case

for specific personal jurisdiction over Powermax. Powermax has **TWENTY-ONE DAYS** to answer or otherwise respond to Plaintiffs' Complaint.

    **SO ORDERED.**

    **SIGNED: August 3, 2023.**

                                                _____
                                                JANE J. BOYLE
                                                UNITED STATES DISTRICT JUDGE